The first case is Consolidated Three Appeals, Mark Lane v. Marion Feather, though I understand the warden's name has now changed. Good morning, Your Honor. May it please the Court, Elizabeth Daly on behalf of the appellant Mark Lane. With the Court's permission, I'll reserve two minutes for rebuttal. As expansively interpreted to apply to non-true threats, Bureau of Prisons Code 203 unconstitutionally censors a broad swath of protected speech. Because the regulation is overbroad in comparison to the purported interests put forth by the government, this Court should hold that Code 203 violates the First Amendment as applied to outgoing mail. The test for outgoing mail derives from the case of Procunier v. Martinez in the Supreme Court, which requires a close fit between the scope of the regulation's censorship and a legitimate government interest, specifically in security, order, or rehabilitation. If Code 203 were interpreted to encompass only true threats, then we wouldn't have a First Amendment problem because there would be no protected speech. So we're bound by the prior Ninth Circuit panel opinion unpublished, but it's the law of the case for this case. It is the law of the case. And they rejected that argument that it only applies to true threats. Correct. Yes. According to the Bureau of Prisons and the prior panel opinion, Code 203 encompasses all threatening statements, and that's where the overbreadth problem arises, because non-true threats have broad and ill-defined boundaries. Unlike a true threat that requires an intentional mens rea, a serious expression of an intent to inflict unlawful harm that's imminent, that it has to be directed to a particular group or individual, Code 203 jettisons all of those restrictions. It includes jokes and hyperboles that are not serious expressions of an intent to harm, statements that do not threaten unlawful harm, such as in the case of self-defense or even a parent threatening an unruly child back at home with discipline. So we're supposed to read this in a reasonable fashion, and the government argues that threatening another with bodily harm, and it refers to bodily harm, is sufficiently tailored for procuniate purposes. I think, I don't know if it was, we're having two different sets of appeals related to Mr. Lane's concerns. So there were concerns about or arguments that it wasn't, it could relate to dead or fictional people, or it could mean other sorts of offenses like copyright violations, and why wouldn't, why can't the Bureau of Prisons merely read it in a reasonable fashion, and that would suffice to meet procuniate's requirements of fit? I think the right answer to that is that the Ninth Circuit's ruling in the prior panel said that it encompasses all threatening statements, and the Bureau has specifically said that there are no defined boundaries to that. So we don't know the criteria that would apply if the true threat standard is not applied, which the Bureau of Prisons has said that it's not. So a threat of bodily harm... So you don't think a threat, just what a threat of bodily harm, you would seek a per se rule from us, a threat of bodily harm is not sufficiently particular for any purposes, that it doesn't have any content or meaning that can be understood or applied? That's our position, because a threat of bodily harm, if it's not unlawful, would include self-defense. A threat of bodily harm could include a parent saying to their child, when I come home, I'm going to slap you upside the head if you don't get your grades up. So that's a threat of bodily harm, and under the Bureau of Prisons interpretation, it's all threatening statements. So that would be included. If there's a narrowing interpretation of threat, that has yet to be put forth by the Bureau of Prisons. Okay. I want to address the justifications that the government has put forth, which is what the scope of the regulation has to be checked against. And specifically, we have to look at the non-true threats and judge whether the regulation's expansion to unprotected speech is a close fit with the interest they've put forth. And I would say that all of the interests that they've put forth have already been rejected by the Supreme Court. In the affidavit by Disciplinary Hearing Officer Hernandez, the suggestion is that any statement by an inmate, even if it's in outgoing mail, saying that speaking any sort of threat can create an atmosphere of hostility within the institution.  They said, Outgoing personal correspondence from prisoners does not, by its very nature, pose a serious threat to prison order and security. And the distinction here is statements within the institution and statements that are directed out. So another point that the government makes is to point us to footnote 15 in procurnee, which seemingly approved, saying it was indicative of one solution to the problem, language that said, The letter contains threats of physical harm against any person or threats of criminal activity, which the government says is very close to the language of Code 203. But you don't think that footnote 15 and the apparent approval of the Supreme Court is sufficient? No, because I think what the Supreme Court was interpreting there was what we had originally put forth, which is a prohibition on criminal threats. In footnote 15, they said, We're not going to take any position on this, but this seems to be a reasonable solution. And we would agree that if the prohibition in Code 203 were against criminal threats and criminal actions like extortion in outgoing mail, then it would be appropriately tailored to that interest. It does say threats of physical harm against any person or, so it's disjunctive, or threats of criminal activity. The threats of physical harm to any other person, I would say, would be a true threat if it has those qualifications. And there's nothing in the footnote 15 to say how they were interpreting that. I don't think they were interpreting it as all threats. I draw support from that from the Bradley v. Hall decision of this court, where they specifically said, In invalidating a disciplinary action that involved disrespectful comments, they said, If those comments were criminal threats, then they would be properly disciplined. Here, we suggested that the regulation should be limited to criminal threats, and that's not the regulation's scope. It's broader than that. So looking at those non-criminal threats that we have to judge against their interests. The second purported justification for this broad regulation is to encourage positive communication skills. And I want to strongly emphasize that that has been a rejected justification because the Supreme Court has not only said that the interest has to be unrelated to suppressing expression, which is exactly what that is, but it also says that the Bureau of Prisons can't tell people how to express their concerns. That's not the job of the Bureau of Prisons in outgoing correspondence. Our position here is not a position for privacy of outgoing correspondence. The Bureau of Prisons has the authority to read those letters. When they identify a particular, concrete risk of harm, then they can censor that mail. But here, they're proactively saying that prisoners can be disciplined for statements that have no risk of harm. The chilling effect is what this court has to consider under the First Amendment, and it's why we think that Code 203 is overbroad. And with the court's permission, I'll reserve the remainder of my time. Thank you. Thank you. May it please the court. Natalie White, I represent the respondent in this case, Federal Bureau of Prisons. The court should affirm the district court's rulings, both the remand that specifically addressed the First Amendment issue and then also the earlier ruling that the court found that there was some evidence in all three cases to support the decisions of the DHOs. But in response, Your Honor, to some of the comments and argument made by the petitioner, I think the most important thing to clarify, just right out of the gates, is the clarification of the quote that the petitioner relies on from Thornburg. And that's where Thornburg is characterizing the nature of these outgoing correspondence. In that case, it is clear, Your Honor, that Thornburg and the Supreme Court, they're referring to the actual outgoing correspondence that was at issue in Precuniae. And we're talking about outgoing correspondence that talked about magnified grievances, inflammatory remarks, disrespectful language. That is what they're referring to when they're talking about, by the very nature, not having that effect on institutional security. Your Honor, this Code 203 is precisely what Precuniae, Thornburg, and even Bradley were contemplating when they were contrasting an alternate rule that addressed threats. And Thornburg even specifically mentions threats of extortion, threats of blackmail, that they were contemplating this very rule. So Post and Counsel says it's not limited to threats of extortion, blackmail, but could include threats to slap a child on the head. Your Honor, I mean, obviously, everything about this case, these cases need to be considered in the prison context. And while it's true that the BOP does interpret this to include all threats, something like that is not reasonable. And there's also limitations. There are impossibility limitations. If someone is threatening to harm Superman or a fictitional character, that's an impossibility. And these prohibited acts are not resolved in a vacuum. There's a very fair, detailed process involved that involves notice, witnesses, a chance for the inmate to actually explain themselves, and there's a reasonableness in that process every single time. There are some times when they consider the actual charge, whether it was the appropriate charge, whether it needs to be a lesser charge. Maybe it was just an improper use of the mail, not an actual threat. And that's part of the DHO process. It's exhaustive each time that there is a prohibited act that's found. I think the other thing that's also important, just responding to Petitioner's argument, is they're using the term criminal threat, and they're equating that with the current true threat, meaning under Elanis. But clearly, Your Honor, back when Thornburg and Beaucunier and Bradley were decided, that was pre-Elanis. When the courts were talking then about a carve-out for criminal threats, that's pre-Elanis, and that's pre-specific intent, pre-mens rea requirement. They're talking about regular, ordinary threats, and that is what BOP includes, the common meaning, which is also defined in Elanis, and that's what the BOP uses. Your Honor, the government argues that there is a close fit for each of the government's important interests that are listed, whether it's the institutional security, whether it's the rehabilitative purpose. It's incorrect for Petitioner to argue that this does not affect the rehabilitative purpose and that that's been refused. That is not true. In this particular case, the court found clearly that these inmates cannot just use threatening language. They have to learn to communicate fairly, reasonably with their outside community. In fact, the administrative remedy procedure is defined and guided by federal regulations, and that federal regulation explains that not only are the regulations there to protect institutional security, the Fed regs specifically say that by this process, by protecting institutional security, they are therefore also protecting society. And when we're talking about outgoing mail, especially in this case, that's going to Senate Judiciary Committee, it's going to law enforcement, it's going outside of the prison and having that effect, then there is a concern. There's a concern not only for the effect when it comes back to the prison and the prison has to investigate that threat, figure out if it's real. We expect the prison to investigate that threat. Imagine what would happen if they didn't, if these threats were allowed to leave the prison, to go to law enforcement, to go to Congress, and the BOP decided not to investigate. We expect them to. That's part of the process. Now imagine what if it goes to a citizen. It's not a threat to the citizen necessarily. What if that citizen receives a letter that says, if I don't get my way, I'm going to kill a guard, I'm going to kill somebody else. Now that citizen is put in a position, are they required to act? It's a very important government interest when we talk about public security, public safety, and rehabilitative bases. And other courts have found that that reason alone is enough. I mean, never mind institutional security. But there's one thing that has come up since the original argument on this case, something that I don't think was considered at the time. We're talking pre-cell phone when these decisions were made, you know, pre-Internet. The most recent BOP staff murder did not occur inside of the prison, Your Honor. It occurred outside of the prison. And it was choreographed and orchestrated by inmates inside of the prison. So now with the technology and outreach of e-mail, that last prison guard in Puerto Rico was murdered on his way home. So these outgoing correspondents do have an effect, and we take them very seriously at the BOP. But wouldn't that be caught by the true threat if they were true threats, though, if it was narrowed to that? Would it be caught by the true threat?  In other words, if the rule were interpreted as covering only true threats. Potentially not, Your Honor. I mean, that's one thing is while this statute does have some breadth, it is limited. It's necessarily broad to catch all these different types of conduct. I mean, Mr. Lane's case is a perfect example. He doesn't necessarily threaten the life of a guard or life of a person in the exact same way every single time. In fact, he does it differently in the six cases that you're going to hear today. And in order to catch all of those, we need to have that broad. It's broad but not too broad. And it doesn't – it's not so broad that it prohibits disrespectful language or even coarse language. They're allowed to air their grievances. They can use vulgar language. None of those things are prohibited under this. It is sufficiently tailored as far as this statute is required, as far as the BOP is required. I think what's – How do you interpret the or any other offense language? Your Honor, clearly in this case, that was not something that was applied to Petitioner. So the facts of his case and that part of the regulation wasn't applied to him. However, my interpretation, and this may be something you may hear about more from my colleague from the Central District of California who's coming up next. However, it is interpreted, any other offense, when you're talking about a threat. Imagine and think about the Thornburg reference to threats of blackmail or threats of extortion. Consider a threat of arson. Consider a threat, and I believe this threat example came from Petitioner, a threat of causing a riot in the cafeteria, which would be a very serious concern for the Bureau of Prison. So whatever the threat is, it doesn't necessarily have to be a threat to substantial bodily injury of that person. So there are other offenses, and when they use the term offense, when you look at the list of prohibited acts in the BOP code, it explains that offenses can include other high-level and greater-level offenses, but then also criminal offenses as well. And, Your Honor, in the case where we do have an actual true threat, there is a completely different course of action that is taken. Those cases are referred out to the FBI and investigated for criminal prosecution. So there is a completely different avenue that we can use there. I just, in my last few seconds, I think it's important because throughout the briefing and even today, Petitioner lists, I think I collected up to 10 different ways to minimize what has been done in this case. They talk about unhappy choice of words, ill-defined speech, innocuous statements, misdirected jokes. I could go on. None of those apply in the prison context. It's a very serious environment, and if there was a situation where someone did have a joke in it, it could be explained, that would be fleshed out through the administrative remedy process, Your Honor. So the example we provided wasn't a violent riot, but a threat to engage in a nonviolent cafeteria strike, which would be included within the scope of Code 203 for a threat to commit any other offense. The government's examples of the reasons why Code 203 needs to be overbroad all fall within a much narrower range of prescribed conduct, which would be encompassed primarily within the true threat or threat of crime conduct definition. They are suggesting that there is an implicit limitation in Code 203, that it doesn't include threats that would be impossible to carry out, threats that would be unreasonable, or threats where the prisoner can rely on the fair judgment of the disciplinary hearing officer to understand that they didn't really mean a threat. But those limits need to be in the regulation itself in order to comply with the First Amendment, because the First Amendment is concerned not solely with the precise scope of the regulation, but also with the chilling effect, and that's what we're worried about here. The government started with a clarification of what they said in Thornburg, and I would encourage the court to review that case because they discuss the reasons why, when you're regulating outgoing mail, that you don't look at the risks from internally directed statements. So that's what we're relying on Thornburg and Pecunia for, because those are exactly what the government has argued is the risk for prohibiting all threats. They say because it might be viewed by somebody within the institution. It could create an atmosphere of hostility within the institution. And Thornburg says no, you're not looking at what would happen if those threats were made in the prison. The issue with rehabilitative purpose has been soundly rejected, not only by the Supreme Court, but by a series of circuit court authority, including Loggins v. Delo in the Eighth Circuit, and McNamara v. Moore in the Fifth Circuit, where they say Pecunia already rejected the idea that you can't use obscene, coarse, offensive language that people might find disrespectful or hostile or abusive, that they're allowed in their private outgoing correspondence to express themselves. If I could just make one more point. I also wanted to point the court to the Pecunia statement that says the weight of professional opinion is that freedom of correspondence advances rehabilitation. Thank you. Thank you. We thank both parties for their arguments, and the three cases, Lane v. Feather, are submitted.
judges: Fernandez, Ikuta, Sessions